BAKER & BENNETT CO. v. JOHN C. DETTRA & CO., Inc.

(District Court, E. D. Pennsylvania.  June 6, 1918.)

No. 1813.

1. INJUNCTION ⬤137(4)—PRELIMINARY INJUNCTION—CONTEST OF FACTS.
    In cases wherein the facts are contested, the courts will not grant relief by preliminary injunction, but will await action until the time for final decree.

2. INJUNCTION ⬤136(2)—PRELIMINARY INJUNCTION—TRADE DISPUTE.
    Where plaintiff company sold toys manufactured by defendant company, securing customers and aiding in building up a joint business, after defendant has terminated the relation, and pending final decree in plaintiff's suit, the latter is entitled to preliminary injunction restraining further interference by defendant with its trade through threats of litigation for infringement of patent rights.

In Equity.  Suit by the Baker & Bennett Company against John C. Dettra & Co., Incorporated.  On motion for preliminary injunction. Writ to issue on condition.

J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., and T. Hart Anderson, of New York City, for plaintiff.

Owen J. Roberts, of Philadelphia, Pa., and John M. Dettra, of Norristown, Pa., for defendant.

DICKINSON, District Judge.  The fact situation in this case, as stated by the respective parties, presents a sharp contrast.  From the viewpoint of the plaintiff, the defendant was its manufacturing agent, and, having quit its employment, is seeking to possess itself of the property if its employer, by appropriating to itself the business which the employer has heretofore done through it.  From the standpoint of the defendant, the plaintiff, who was the defendant's selling agent, upon the termination of the employment, is seeking to appropriate the business of the defendant.  It is clear that the rights, legal and equitable, of the parties, cannot be determined until the fact situation has been fully developed and the true state of the facts is known.  There is the further possibility that the relation of employer and employé did not exist, and that neither was the one or the other, but that the parties were engaged in something in the nature of a joint venture.

[1] The respective positions of the parties, thus sharply contrasted, are advanced and defended with equal vigor.  The rule applied by the courts in cases in which the facts are thus hotly contested is itself not open to controversy.  It is that the courts will await action until the time for final decree.  Under the peculiar situation which develops out of the facts in this case, so far as they are not in dispute, the application of this rule might, however, work an injustice which need not be done.

[2] One of the facts which is not in dispute is that the defendant has in the past been a dealer in flags, with a good firm grip upon the market.  Another undisputed fact is that the plaintiff was a large dealer in toys and games, with the market in which it was in firm touch.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff was not a manufacturer, but had the things in which it dealt made for it by others. The plaintiff sold flags for the defendant.

The defendant took to the plaintiff the suggestion of the making of a toy golf club to be added to the list of toys in which the plaintiff dealt. The suggestion, as made by the defendant, was rejected by the plaintiff; but there was finally substituted for it a toy golf bag, with a set of toy golf clubs. To this there was afterwards added battleships, and one or two varieties of games. Out of this grew the business of manufacturing by the defendant of the things thus dealt in and their sale by the plaintiff. The relations of the parties were evidenced by annual contracts and by their course of dealings. The form in which the thing should be manufactured, and the little touches which were thought to make them more marketable, were adopted after conferences and consultations between the parties. This included the character of the packages in which the articles were sold and the labels used. Some of them were sold under the trade-mark of the plaintiff and some without it. The customers were found by the plaintiff, but the goods were shipped by the defendant to the buyers.

Some of the things made were thought to be patentable, and one of the things made and sold was found to have been patented by a third party. With respect to the latter, the right to make and to vend was secured through a license, which was fixed by the patentee at a small sum. For one of the other articles manufactured a patent application was filed, and the patent allowed by the Patent Office, but no patent was ever actually taken out. For another of the articles a patent was applied for, and the application is still pending. The volume of the business grew under the joint efforts of the parties, until their relations were severed by the defendant. This severance was followed by notice given to the trade that the defendant would thereafter sell on its own account what it had theretofore been selling through the plaintiff on commission. This was accompanied by notice that some of the things sold were protected by patents, and a warning that actions would be brought for infringement. The notice was interpreted by the trade as meaning that none could thereafter deal in the articles which the defendant had been manufacturing without incurring the risk of litigation. The notice was in such form as to arouse fear of litigation, and because of this to deter buyers who had theretofore dealt with the plaintiff. To permit the defendant to reap the benefit of the situation thus created is the injustice to which we have referred, so far as the threat of litigation operated. It would leave the defendant in the possession of the whole field until final decree in the present proceedings, and by that time the trade which may possibly be determined to belong to the plaintiff may be wholly lost to it.

The plaintiff recognizes the right of the defendant to manufacture and to sell the things which had before been the subject of the dealings between the parties, but denies the right of the defendant to appropriate the trade which has been built up through the efforts of the plaintiff, by palming off the things sold as the toys and games known as the toys and games of the plaintiff. The plaintiff, therefore, asks for the allowance of a writ of injunction, which shall restrain the defendant

from selling toys and games which are in deceptive imitation of those known to the trade as the toys and games sold by the plaintiff, reserving, however, to the defendant the right to sell such toys and games in likeness to those heretofore sold by the plaintiff, in so far as the likeness pertains to those features which are functional or otherwise essential to the things sold; the prohibition of the right being limited to those features which are in no wise functional, but merely descriptive of the things in which the plaintiff has dealt.

The allowance of an injunction is further asked restraining the defendant from alarming customers of the plaintiff through threats of litigation. The right to an injunction containing the latter feature is based upon two propositions. One is that any patent rights which may be involved belong as much to the plaintiff as to the defendant, although the legal title is in the name of an officer of the defendant company. The other is that, although the right of a patentee to give notice warning against infringements is conceded, the right is limited to a bona fide assertion of the patent right, and may not be used merely as a device to corral or control trade through a threat of litigation not made in good faith. So far as the notice may have had a good-faith motive and purpose, this has been accomplished by the notice already given, and any repetition of notice in the face of the plaintiff's challenge of defendant's patent rights could not be held to be in good faith. The position of the plaintiff in this respect is further buttressed by the averment that the statement of fact made in the notice is false in the respect that it expresses the thought that patents have been actually issued, when in point of fact they have not.

Our conclusion is that the determination of the question of the right of the plaintiff to an injunction against the defendant restraining it from dealing in what it has heretofore made and dealt in must, for the reason already indicated, be deferred until final decree. We think, however, that the plaintiff is entitled to protection at this time from any further interference by the defendant with its trade through threats of litigation, and we allow a writ of injunction, restraining the defendant, until the further order of the court, from giving any further notice to prospective purchasers for the plaintiff, warning them of any danger of litigation through buying of the plaintiff, or threatening them with suits or actions in case they so buy. The writ is to issue upon condition that the plaintiff make no advertising use of this decree, and that it executes and gives to the defendant a bond, with approved surety, in the penal sum of $1,000, with the form of condition usually given upon the allowance of writs of injunction and as is required by law.

A formal decree in conformity herewith may be submitted.